**AMENDED** Complaint Brought Pursuant to 42 U.S.C. sec. 1983 for Malicious Prosecution

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BENNY SALGADO
                                    Plaintiff                          CIVIL ACTION:

v.

THE CITY OF NEW YORK,
NEW YORK POLICE DEPARTMENT,
DETECTIVE RICARDO BOCACHICA (SHEILD #919)

                                                            **AMENDED COMPLAINT**
                                                                **JURY CLAIM**
                                                            **AS TO ALL COUNTS**

                                    Defendants
_____


**INTRODUCTION**

Benny Salgado ["Salgado"] a resident of Bronx County, State of New York asserts the following claims against the defendants in the above-entitled action:

    1. Violation of 42 U.S.C. 1983: Malicious Prosecution


**JURISDICTION**

1. Jurisdiction of this court arises under 28 U.S.C. secs 1331, 1337, 1343(a), and 1367(a); 42 U.S.C. secs. 1983, 1985, 1986, and 1988; and 18 U.S.C. 1961-1968.

2. Jurisdiction of this court for the pendent claims is authorized by F.R Civ.P 18(a), and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

**PARTIES**

3. Plaintiff Benny Salgado ["Salgado"] is a natural person residing in The Bronx, New York, United States of America; was a resident of The Bronx during all relevant times of this action.

4. Defendant City of New York (hereinafter "CITY") is a properly incorporated city in the State of New York

5. Defendant New York Police Department (hereinafter "NYPD") is an authorized agency of the City of New York

6. Defendant Detective Ricardo Bocachica (hereinafter "Bocachica") is an employee of the New York Police Department.

7. At all times material to this Complaint, Defendants CITY and the NYPD acted toward Plaintiff under color of the statutes, ordinances, customs and usage of the City and State of New York.

8. At all relevant times, quotations as to violations of specific Constitutional Amendments are discussed as incorporated under the Fourteenth Amendment, with respect to non-federal actors.


## PLAINTIFF'S BACKGROUND FACTS


9. On September 10, 2010 at approximately 4:00pm, Salgado was charging his phone at a friend's residence located at 1175 East 229th Street, apt 6D in the county of the Bronx.

10. Living in the same building, Salgado decided to go downstairs to his own apartment to see if his mother was home as he had left his keys inside the apartment.

11. Upon realizing his mother was not home yet, Salgado proceeded to go downstairs to the front of the building to wait for his mother to come home.

12. On the way downstairs, Salgado passed by an unidentified male talking on his cell phone, but paid him no mind as this individual was a stranger to him.

13. Salgado waited in front of his own building no longer than two minutes when five police officers came running towards the front of the building. Doing nothing illegal, Salgado did not feel any concern regarding the charging officers.

14. However, once the officers reached Salgado, one of them (presumably the "arresting officer" Defendant Bocachica) grabbed him by his left arm and proceeded to bend it behind his back attempting to handcuff Salgado.

15. Not resisting, but requesting an answer, Salgado questioned why he was being arrested, but got no response, while at the exact same time, Salgado's mother approached the building and began crying upon witnessing her son being arrested.

16. Salgado was placed inside of a police van with approximately four other individuals. Five minutes later Salgado's friends from the apartment (6D) he was in previously were also placed inside of the van.

17. Salgado's friends that were placed in the van included Allen Rosenbaum, Christian Lopez, and Shanee Clemons.

18. Salgado was ultimately brought to the 47th Precinct in Bronx County.

19. Salgado eventually left the 47th Precinct and was brought to Central Booking where he was arraigned in Bronx Criminal Court and charged with felony level possession of a controlled substance; the commencement of the criminal action at issue.

20.  Bail was set at arraignments at $125,000.00; an amount Salgado could not pay.

21. Consequently Salgado remained incarcerated for seven (7) days at Riker's Island where he was constantly threatened, bullied and assaulted by other inmates until bail was lowered to $250.00 and he was released upon his family paying the bail.

22. In the interim, an Assistant District Attorney was presumably assigned to prosecute Salgado's case, and reviewed the file consisting of the arresting officers involved and the method by which they came to arrest Salgado.

23. After months of court appearances without a disposition or hearing/trial, Salgado finally had a hearing that took place on December 10-12, 2012 to determine the probable cause of the arrest of Salgado.

24. The hearing was before the Honorable Judge Caesar Cirigliano.

25. During the hearing, instead of Defendant Bocachica, the District Attorney's office decided to put one of the NYPD undercover officers who was at the scene on the stand to testify regarding the events surrounding Salgado's September 10, 2010 arrest.

26. The sparingly detailed testimony the undercover officer provided the Court could not establish what descriptive information was given to the arresting officer that justified the detaining of Salgado.

27. It is worth mentioning that Defendant Bocachica has been sued numerous times by various arrestees claiming Bocachica engaged in everything from planting drugs on suspects to assaulting them while handcuffed.

28. Case number 09 CV 3790 (JSR) is just one example of the many cases Defendant Bocachica has been a defendant in.


29. Needless to say, after hearing the testimony of the arresting officers, Judge Cirigliano concluded that probable cause could not be established.

30. On December 17, 2012 Hon. Caesar Cirigliano issued his decision; stating that the Court was "compelled to dismissed(sic) all charges against these defendants as charged under indictment 2317/2011".

31. Consequently Salgado's criminal case was dismissed in his favor on April 10, 2013.


**UNDISPUTED FACTS**

32. Plaintiff was arrested on September 10, 2010.

33. Plaintiff was transported to the 47th Precinct, after being taken into NYPD
     custody

34. At arraignment bail was set at $125,000.00.

35. Bail remained at $125,000 for 7 days, and was subsequently lowered to $250.

36. A probable cause (PC) hearing occurred on December 10 through December 12, 2012.

37. On December 17, 2012 Honorable Cesar CIrigliano issued a Decision/Order dismissing the indictment.

38. Ultimately, all charges were dismissed on April 10, 2013.


**COUNT 1: VIOLATIONS OF 42 U.S.C. 1983: MALICIOUS PROSECUTION**

39. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 through 38 above with the same force and effect as if herein set forth.

40. Defendants, intentionally and maliciously, instituted and pursued a criminal action against Salgado that was brought without probable cause and was dismissed in Salgado's favor.

41. A malicious prosecution claim requires the plaintiff to establish four criteria: 1) the defendant commenced or continued a criminal proceeding against the plaintiff; 2) the proceeding was dismissed in the plaintiff's favor; 3) there was an absence of probably cause in bringing the proceeding; and 4) the proceeding was brought with malice.

42. On September 10, 2010 Salgado was arrested by Defendant Bocachica.

43.  Roughly 24 hours after Salgado's arrest at the hands of Defendant, he was arraigned in Bronx Criminal Court on felony level charges of possession of a controlled substance, thus commencing a criminal proceeding against Salgado.

44. Upon the review of testimony given by the NYPD undercover officer, Judge Cirigliano concluded that probable cause could not be established.

45. In addition, Under New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Cox v. County of Suffolk*, 780 F.Supp. 103, 108 (E.D.N.Y.1991); *see also Maxwell v. City of New York*, 156 A.D.2d 28, 554 N.Y.S.2d 502 (1st Dep't 1990); *Rodriguez v. City of New York*, 149 Misc.2d 295, 563 N.Y.S.2d 1004 (Sup.Ct. N.Y. County 1990).

46. In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.   *See Callan v. State*, 73 N.Y.2d 731, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988).2   The New York Court of Appeals has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."   Colon, 60 N.Y.2d at 82, 455 N.E.2d 1248, 468 N.Y.S.2d

47. Presumably, the Assistant District Attorney must have consulted with the undercover officer at issue at various times throughout the pendency of this case. During those conversations the undercover officer's recollection, or lack thereof, of Salgado's involvement in the crime alleged must have come up.

48. Additionally, when learning of the arresting officer that was linked to the case, the Assistant District Attorney should have thoroughly investigated the veracity of the facts as relayed to them by Defendant Bocachica, considering his aforementioned history.

49. This case was brought against Salgado intentionally and with malice

50. Under New York law, malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."   *Nardelli v. Stamberg,* 44 N.Y.2d 500, 502–03, 377 N.E.2d 975, 976, 406 N.Y.S.2d 443, 445 (1978).

51. In most cases, the lack of probable cause—while not dispositive—"tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause."   *Conkey v. State*, 74 A.D.2d 998, 999, 427 N.Y.S.2d 330, 332 (4th Dep't 1980).

52. Again, Judge Cirigliano's finding at the aforementioned hearing determined the lack of probable cause NYPD officers, (including Defendant Bocachica), had to arrest Salgado.

53. As a result of the concerted unlawful and malicious prosecution of Salgado, the Defendant's deprived Salgado of both his right to liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. sec. 1983.


WHEREFORE, Plaintiff demands judgment for the malicious prosecution against all Defendants jointly and severally, for actual, general, special and compensatory damages in the amount of $1,000,000 and further demands judgment against each of said Defendants, jointly and

severally, for punitive damages in the amount of $1,000,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

Respectfully submitted,


Benny Salgado
By his attorney
July 28, 2014


_____
Conway C. Martindale II
Martindale & Associates, PLLC
380 Lexington Avenue, 17th Floor
New York, NY 10168
212-405-2233